UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

JOSEPH RADFORD, ET AL.

CIVIL ACTION

VERSUS

NO. 11-561-JJB-SCR

RED JACKET FIREARMS, L.L.C., ET AL.

## RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This matter is before the court on a Motion (doc. 66) for Summary Judgment filed by Defendants Red Jacket Firearms, L.L.C., Red Jacket, Inc., William Hayden, and Red Jacket International, L.L.C. ("Defendants"). Plaintiffs Joseph Radford, Joshua Currey, and Earl Lee ("Plaintiffs") have filed a Memorandum (doc. 74) in Opposition, to which Defendants have filed a Reply (doc. 78). Oral argument is not necessary. This Court previously issued an Order (doc. 91), in which it granted Defendants' Motion for Summary Judgment as to Plaintiffs' federal Rule 10b-5 claim, but declined to reach the state law claims at that time. Subsequently, this Court chose to retain jurisdiction of the remaining state law claims. (Doc. 93). For the reasons provided herein, the Court **GRANTS IN PART** and **DENIES IN PART** the Defendants' Motion (doc. 66) for Summary Judgment.

### Background

On April 6, 1999, Defendant William Hayden ("Hayden") incorporated Red Jacket, Inc., a refrigeration company, with the Louisiana Secretary of State. (Doc. 74, Ex. A). The Articles of Incorporation authorized the issuance of 100 shares of no par value common stock. In 2002, the Articles of Incorporation were amended to permit Red Jacket, Inc. to sell firearms and operate a shooting range. (Doc. 74, Ex. B). Hayden applied for and obtained a Federal Firearms License ("FFL") and paid for the corresponding Special Occupational Tax ("SOT"). The tax ID number

1

associated with the FFL and the SOT were in Red Jacket, Inc.'s name. (Doc. 66, Ex. 1). Hayden leased a commercial property for the retail store and personally purchased the initial inventory of firearms.

After leasing the property, Hayden and Plaintiff Joseph Radford ("Radford") made improvements in the retail showroom. In exchange for Radford's labor, Hayden and his ex-wife, Trudy Lee ("Ms. Lee"), issued 10 Red Jacket, Inc. stock certificates in September 2002, which equaled 10% of the ownership interest in the store. Plaintiffs assert that Hayden also issued five stock certificates to Plaintiff Earl Lee ("Lee") and two stock certificates to Plaintiff Joshua Currey ("Currey"). Plaintiffs allege that the stock certificates were given to Lee and Currey as payment for materials and labor they provided in making improvements at the commercial property. (Doc. 19). However, Defendants assert that Ms. Lee, and not Hayden, gave Lee the stock certificates and that Ms. Lee gave him the certificates as a gift. (Doc. 78, Ex. B).

After issuing the stock certificates, Hayden wrote and circulated a business plan to attract investors. However, the plan identified the business as "Red Jacket Firearms," and not as Red Jacket, Inc. The prospectus identified Hayden and Ms. Lee as 51% owners and Radford as a 10% owner. The prospectus explained that there were 100 preferred stock shares valued at $1,000.00 per share and that 29 shares had already been issued, but 20 shares were available for purchase. (Doc. 74, Ex. C-1). However, the Articles of Incorporation provided that the authorized shares were no par value common stock. (Doc. 74, Ex. A).

In January 2003, there was a burglary at the store, and the majority of the inventory was stolen. (Doc. 66, Ex. 1). Hayden asserts that as a result, Red Jacket, Inc. "had no inventory, no revenue, and significant debt," which he paid and has continued to pay. (Doc. 66, Ex. 1, ¶ 7). Because Hayden was no longer able to pay the rent on the property, he turned over the building

2

to the landlord, and the landlord began his own firearm retail business and firing range, Red Stick Firearms. (Doc. 66, Ex. 1, ¶ 8). Hayden worked for the landlord and Red Stick Firearms until his daughter, Stephanie Hayden, purchased the business in December 2004. (Doc. 66, Ex. C). Hayden purportedly retained the FFL license by keeping the Red Jacket, Inc. tax ID number, which permitted him to work as a gunsmith, but Hayden asserts that Red Jacket, Inc. was not successful. (Doc. 66, Ex. 1, ¶ 12). Defendants have maintained that Red Jacket, Inc. never became successful and that the business failed. (Docs. 66 & 78). However, in 2009, Red Jacket, Inc. filed a tax return, reporting $265,655.00 in gross sales. (Doc. 77, Ex. H). Additionally, although Radford, Lee, and Currey purportedly were shareholders in Red Jacket, Inc., the tax return provides that Hayden is the sole shareholder. *Id.*

On May 7, 2010, Hayden and his daughter formed Red Jacket Firearms, L.L.C. At the beginning of July 2010, Hayden registered in his name the trademark "Red Jacket Firearms" with the Louisiana Secretary of State, listing April 6, 1999 as the date of first use of the term, the same date that Red Jacket, Inc. was incorporated. (Doc. 74, Ex. G). At some point in 2010, Hayden became involved in a matter with the United States Bureau of Alcohol, Tobacco and Firearms ("ATF") due to "record-keeping discrepancies involving the FFL" that was associated with Red Jacket, Inc. (Doc. 66, Ex. 5). The ATF advised Hayden to surrender the FFL to the ATF and agreed that Hayden could transfer the firearms to Red Jacket Firearms, L.L.C., which had an FFL. *Id.* According to his former attorney's affidavit, if Red Jacket, Inc. had retained the firearms without holding an FFL, Hayden would have been in violation of federal regulations. *Id.* Hayden asserts that the firearms were Red Jacket, Inc.'s only remaining assets. (Doc. 66, Ex. 1). Hayden argues that upon advice of counsel, he kept Red Jacket, Inc. active "in case it was

Case 3:11-cv-00561-JJB-SCR   Document 99   09/13/13   Page 3 of 21

needed for unforeseen future business opportunities." (Doc. 66, Ex. 5). Due to the negotiations with the ATF, Hayden was removed as a member of Red Jacket Firearms, L.L.C.

Finally, at some point in 2010, Hayden began filming a reality television show, "Sons of Guns," produced by the Discovery Channel, which focused on his operation of Red Jacket Firearms. The Plaintiffs had not been in contact with Hayden since the 2003 burglary, and it was not until "Sons of Guns" aired on or around January 26, 2011 that Radford became aware that Red Jacket, Inc. was still an operating business. Radford allegedly contacted Defendants about the stock certificates Hayden had issued and learned that the stock certificates were worthless. (Doc. 19).

Radford initially filed suit, and later amended it to add the remaining plaintiffs, alleging that Radford, Currey, and Lee were the "rightful owners of the securities because they received the certificates in consideration" for labor and materials provided in making improvements at the commercial property. (Doc. 19, ¶ 48). Plaintiffs allege that Hayden fraudulently transferred Red Jacket, Inc.'s assets to Red Jacket Firearms, L.L.C. without notifying Plaintiffs or convening a shareholders meeting. Plaintiffs filed suit against Defendants, alleging violations of (1) Securities and Exchange Commission ("SEC") Rule 10b-5 and (2) Louisiana Blue Sky laws. Plaintiffs seek damages based on breach of fiduciary duty and detrimental reliance. Plaintiffs also seek a declaratory judgment that Radford is a 10% owner, Currey is a 2% owner, and Lee is a 5% owner of Red Jacket, Inc. and any subsidiary, as well as a revocation of the 2010 transfer of assets.

Defendants subsequently filed a Motion (doc. 66) for Summary Judgment, which this Court granted with regards to the Plaintiffs Rule 10b-5 claims. (Doc. 91). Accordingly, the Rule 10b-5 claim was dismissed from the pending matter. *Id.* Nonetheless, the Court failed to reach

the Plaintiffs' state law claims. Instead, this Court commanded the parties to show cause as to why the supplemental state law claims should not be dismissed with prejudice as a result of the dismissal of the federal claim. After Defendants filed their Memorandum (doc. 92) in Support of Pendent Jurisdiction, this Court issued an Order (doc. 93) retaining jurisdiction over the matter. This Court will now rule on Defendants' Motion for Summary Judgment with regards to the Plaintiffs' state law claims.

## Analysis

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact." Fed. Rule Civ. P. 56(a). The moving party seeking summary judgment has the burden of demonstrating the absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). When the non-moving party has the burden of proof at trial, the moving party need only demonstrate that the record lacks sufficient evidentiary support for the non-moving party's case. *Id.* The moving party can do this by showing that the evidence is insufficient to prove the existence of one or more essential elements of the non-moving party's case. *Id.* A party must support its summary judgment position by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. Rule Civ. P. 56(c)(1).

Although the Court considers evidence in a light most favorable to the non-moving party, the non-moving party must show that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). Conclusory allegations and unsubstantiated assertions will not satisfy the non-moving party's burden. *Grimes v. Tex. Dep't of Mental Health*, 102 F.3d 137, 139–40 (5th Cir. 1996). Similarly, "[u]nsworn pleadings, memoranda or the like are not, of

course, competent summary judgment evidence." *Larry v. White*, 929 F.2d 206, 211 n.12 (5th Cir. 1991).

### 1. Successor Liability

Before looking at specific claims, it must be determined if certain Defendants can be liable for the Plaintiffs' claims. More specifically, Defendants aver in their Motion for Summary Judgment that Red Jacket Firearms, L.L.C. ("Red Jacket Firearms") and Red Jacket International, L.L.C. ("Red Jacket International") are not successors of Red Jacket, Inc., and therefore, cannot be held liable for the Plaintiffs' purported damages. In their Motion for Summary Judgment, Defendants assert that Plaintiffs have failed to offer specific evidence of how Red Jacket Firearms or Red Jacket International were complicit in the purported wrongdoing or why they should be liable as successors for the alleged damages. Because Defendants do not bear the burden of proof at trial, they only need to show that the evidence is insufficient to prove the existence of one or more essential elements of the Plaintiffs' case. Accordingly, based on the Defendants' showing, the Plaintiffs needed to come forward and show that there is a genuine issue for trial. In their opposition, Plaintiffs failed to mention Red Jacket International throughout their entire pleading. Accordingly, Plaintiffs have failed to present a genuine issue of material fact regarding the liability of Red Jacket International as either an accomplice or a successor of Red Jacket, Inc. Therefore, Red Jacket International must be dismissed from the pending matter.

With regard to Red Jacket Firearms, Plaintiffs contend in their opposition that it is an "alter-ego" of Red Jacket, Inc. or forms part of a single-business enterprise with Red Jacket, Inc., based on tax returns and other public pronouncements of Defendant Hayden. In order for Red

Case 3:11-cv-00561-JJB-SCR   Document 99   09/13/13   Page 6 of 21

Jacket Firearms to be liable for the actions of Red Jacket, Inc., it must be either a successor, alter ego, or form part of a single business enterprise with Red Jacket Firearms. However, Plaintiffs did not raise these theories of liability in their complaint, and instead, raised them for the first time in their Opposition to Defendants' Motion for Summary Judgment. Under Rule 9(b) of the Federal Rules of Civil Procedure, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." As the Eastern District of Louisiana has previously stated, "[a]bsent allegations of fraud, alter ego allegations do not need to comport with the pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure." *MedRehab v. Evangeline of Natchitoches, Inc.*, 1998 WL 671287, *2 n.1 (E.D. La. Sept. 24, 1998). However, in the present matter, it is clear that the alter ego or single business enterprise allegations arise out of an assertion of fraud. At the most basic level, Plaintiffs aver that Defendants engaged in fraudulent practices by transferring the remaining assets of Red Jacket, Inc. to Red Jacket Firearms. As a result, Plaintiffs allege that Red Jacket Firearms should be held liable for the alleged fraudulent practices of Red Jacket, Inc. and Defendant Hayden due to being an alter ego or forming part of a single business enterprise. Nevertheless, Plaintiffs did not assert that Red Jacket Firearms was part of a single business enterprise, an alter ego, or a successor of Red Jacket, Inc. until their Opposition to Defendants' Motion for Summary Judgment. Thus, because both the alter ego and single business enterprise claims are grounded on a theory of fraud, Plaintiffs needed to plead them more specifically in their complaint, pursuant to Rule 9(b) of the Federal Rules of Civil Procedure. Therefore, this Court will grant the Defendants' Motion for Summary Judgment and dismiss Red Jacket Firearms.

**2. Breach of Fiduciary Duty Claim Under La. R.S. 12:91**

Case 3:11-cv-00561-JJB-SCR   Document 99   09/13/13   Page 7 of 21

Plaintiffs seek to recover an ownership interest in Red Jacket Firearms and other losses resulting from Defendants' alleged breach of fiduciary duty in contravention of La. R.S. 12:91. (*See* Doc. 16, p. 14; Doc. 74, p. 12). However, this Court must first determine whether Plaintiffs have a right to sue for personal damages for a breach of fiduciary duty under La. R.S. 12:91, or whether their claim must be brought through a derivative action. "It is established that where the breach of fiduciary duty causes loss to a corporation itself, the suit must be brought as a derivative or secondary action." *Wilson v. H.J. Wilson Co., Inc.*, 430 So. 2d 1227, 1234 (La. App. 1 Cir. 1983). "However, that is not the case where the breach of a fiduciary duty causes loss to a shareholder personally." *Id.* "In case of personal loss, the shareholder may sue individually to recover his loss." *Id.* (citing *Junker v. Crory*, 650 F.2d 1349 (5th Cir. 1981); *Noe v. Roussel*, 310 So. 2d 806 (La. 1975)).

In asserting their cause of action, Plaintiffs rely on the *Wilson v. H.J. Wilson Co.* case for support of the proposition that a plaintiff has a direct cause of action against a director when the ostensible breach of fiduciary duty by a corporate officer or director causes a loss to the shareholder. (Doc. 74, p. 8). However, Plaintiffs' reliance on *Wilson* is misplaced in this instance. First, *Wilson* has been limited to the specific facts of the case on numerous occasions. *See, e.g., Bordelon v. Cochrane*, 533 So. 2d 82, 85 (La. App. 3 Cir. 1988) ("We find the *Wilson* decision distinguishable on the facts."). Moreover, this is not a situation where the alleged breach of fiduciary duty caused a loss directly to an individual shareholder or group of shareholders. Rather, the alleged breach of fiduciary duty through transferring assets between Red Jacket, Inc. and Red Jacket Firearms caused a loss to Red Jacket, Inc. as a whole, and only indirectly to any shareholders. As the Louisiana Court of Appeal for the Fifth Circuit recently stated:

> Under Louisiana law, "if the breach of fiduciary duty causes a direct loss to the shareholder or causes damage affecting the shareholder personally, a shareholder

8

may have the right to pursue a claim individually for breach of fiduciary duty to the corporation under La. R.S. 12:91. However, in situations where the alleged loss to the individual shareholder is the same loss that would be suffered by other shareholders, the loss is considered to be indirect. Where the shareholder, but not the corporation, suffers a loss, that loss is considered a direct loss to the shareholder, and the shareholder may have a right to sue individually."

*Paul Piazza and Son, Inc. v. Piazza*, 83 So. 3d 1066, 1070 (La. App. 5 Cir. 2011) (quoting *Monroe v. Baron One*, L.L.C., 902 So. 2d 529 (La. App. 5 Cir. 2005)). In the present matter, the alleged breach of fiduciary duty relates to the transfer of assets from Red Jacket, Inc. to Red Jacket Firearms. Accordingly, any loss suffered was to the corporation, Red Jacket, Inc., as a whole, with the shareholders of Red Jacket, Inc. suffering an indirect loss. All shares in Red Jacket, Inc. suffered an indirect loss as a result of the transfer, not just the particular shares held by the Plaintiffs.

The present matter is not a situation like the one in *Wilson*. In *Wilson*, the minority shareholder brought a breach of fiduciary duty claim resulting from the alleged fraudulent transfer of his shares to the corporation's principal shareholder. *See Wilson*, 430 So. 2d at 1229-31. Unlike *Wilson*, the present matter is a situation where any alleged loss by Plaintiffs was an indirect loss that resulted from the loss suffered by Red Jacket, Inc. as a whole. Any shares the Plaintiffs owned were not taken from them and fraudulently re-distributed, unlike the *Wilson* case. Rather, any shares Plaintiffs owned decreased in value as a result of the reduction in the corporation's overall value from the transfer of assets from Red Jacket, Inc. to Red Jacket Firearms. Therefore, any action for breach of fiduciary duty must be brought in a derivative action to recover damages for the corporation, and not in a personal action seeking personal damages. Accordingly, summary judgment must be granted in favor of Defendants as it relates to the Plaintiffs' breach of fiduciary duty claim under La. R.S. 12:91.

**3. Unlawful Distribution Claim Under La. R.S. 12:92(D) and 12:93(D)**

Case 3:11-cv-00561-JJB-SCR   Document 99   09/13/13   Page 9 of 21

Plaintiffs further claim that, under La. R.S. 12:92(D) and 12:93(D), Defendants made an unlawful distribution through the alleged fraudulent transfer of assets from Red Jacket, Inc. to Red Jacket Firearms, and thus, seek "recovery and award . . . of their individual, personal pro-rata interests in Red Jacket Firearms, L.L.C. that were unlawfully diverted from them, and converted by Mr. Hayden." (Doc. 74, p. 12). Louisiana Revised Statutes 12:92(D) provides:

> If any dividend shall be paid in violation of this Chapter, or if any other unlawful distribution, payment or return of assets be made to the shareholders, or if the corporation purchase or redeem any of its own shares in violation of this Chapter, the directors who knowingly, or without the exercise of reasonable care and inquiry, voted in favor thereof shall be liable jointly and severally to the corporation, or to creditors of the corporation, or to both, in an amount equal to the amount of the unlawful distribution. An action to enforce such liability must be brought within two years from the date on which the distribution was made, and this time limit shall not be subject to suspension on any ground, nor to interruption except by timely suit.

La. R.S. 12:92(D). Additionally, La. R.S. 12:93(D) states:

> Every shareholder who receives any unlawful dividend or other unlawful distribution of assets shall be liable to the corporation, or to creditors of the corporation, or to both, in an amount not exceeding the amount so received by him. An action to enforce this liability must be brought within two years from the date on which the unlawful distribution was received, and this time limit shall not be subject to suspension on any ground, nor to interruption except by timely suit.

La. R.S. 12:93(D). Plaintiffs attempt to rely on these provisions to recover personal damages for any losses allegedly suffered from the transfer of assets between Red Jacket, Inc. and Red Jacket Firearms. However, similar to their action under La. R.S. 12:91, Plaintiffs' claims under La. R.S. 12:92(D) and 12:93(D) must be brought in a derivative action to recover damages for the corporation, Red Jacket, Inc., and not in a personal action to recover personal damages. As the statutes explicitly provide, a director or shareholder that violates the statutes is liable to the corporation and/or creditors, not to individual shareholders. The action to recover the unlawful distribution belongs to the corporation as a whole, not to the shareholders in their individual

10

capacity. *Hebert v. Blanchette*, 2 So. 3d 1259, 1262 (La. App. 3 Cir. 2009) ("Accordingly, pursuant to La. R.S. 12:92, those defendant/directors would be liable, upon the proper showing, 'to the corporation[,]' not to individual shareholders.") Any action seeking to recover an unlawful distribution from a director who approved the distribution or a shareholder that received the unlawful distribution belongs "to the corporation, or to creditors of the corporation, or to both." La. R.S. 12:92(D); La. R.S. 12:93(D).

Accordingly, these claims by Plaintiffs must be brought in a derivative action on behalf of the corporation or by creditors, not a personal action by the shareholders. And Plaintiffs are not creditors/obligees of the corporation simply by owning shares in Red Jacket, Inc., as is discussed further below. Therefore, because these claims were improperly brought by Plaintiffs in a personal action seeking personal damages, summary judgment will be granted in favor of Defendants as to the La. R.S. 12:92(D) and La. R.S. 12:93(D) claims.

### 4.  Louisiana Blue Sky Law Claims [La. R.S. 51:712(A)(2) and 51:712(D)]

Plaintiffs also claim that Defendants violated the Louisiana Blue Sky Law through the transfer of assets from Red Jacket, Inc. to Red Jacket Firearms. Louisiana Revised Statutes 51:712(A)(2) provides:

> It shall be unlawful for any person . . . to offer to sell or to sell a security by means of any oral or written untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, the buyer not knowing of the untruth or omission, if such person in the exercise of reasonable care could not have known of the untruth or omission.

La. R.S. 51:712(A)(2). Furthermore, La. R.S. 51:712(D) states:

> It shall be unlawful for any person in connection with the offer, sale, or purchase of any security, directly or indirectly: (1) To employ any device, scheme, or artifice to defraud; (2) To engage in any transaction, act, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser or seller.

11

La. R.S. 51:712(D).

Plaintiffs assert in their Opposition to the Defendants' Motion for Summary Judgment that they are not concerned with the 2002 issuance of the shares, but rather, with the 2010 transfer of assets between Red Jacket, Inc. and Red Jacket Firearms. (Doc. 74, p. 20). However, both of these provisions are inapplicable to the 2010 transfer of assets. For these provisions to apply, the relevant transaction must involve the offer or sale of a security, or the purchase of a security when dealing specifically with Section 51:712(D). A "security" is defined as:

> [A]ny note; stock; treasury stock; bond; debenture; evidence of indebtedness; certificate of interest or participation in any profit-sharing agreement; collateral-trust certificate; preorganization certificate or subscription; transferable share; investment contract; voting-trust certificate; certificate of deposit for a security; fractional undivided interest in oil, gas, or other mineral rights; any put, call, straddle, option, or privilege on any security, certificate of deposit, or group or index of securities (including any interest therein or based on the value thereof); or, in general, any interest or instrument commonly known as a "security"; or any certificate of interest or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing.

La. R.S. 51:702(15)(A). To trigger the application of Sections 51:712(A)(2) and 51:712(D), Red Jacket, Inc. would need to have sold or transferred its securities, such as its stock, not just its assets. *See Pittman v. Beebe*, 670 So. 2d 761, 765 (La. App. 3 Cir. 1996) (dismissing claims brought under La. R.S. 51:712 because the corporation sold it "assets" and not the "stock"). However, Plaintiffs only claim that "assets, intellectual property, and other property belonging to Red Jacket, Inc." were transferred between Red Jacket, Inc. and Red Jacket Firearms. (Doc. 74, p. 21). There is no allegation that any stock or other "security" of Red Jacket, Inc. was sold, transferred, or purchased in the relevant 2010 transfer. The sale, transfer, or purchase of a corporation's assets, in and of themselves, does not trigger the application of these Louisiana Blue Sky Law provisions. Therefore, similar to this Court's prior grant of summary judgment in

12

favor of Defendants with regards to Plaintiffs' Rule 10b-5 claim (doc. 91), summary judgment must be granted for Defendants as it relates to Plaintiffs' Louisiana Blue Sky Law claims, because Plaintiffs have failed to assert the most basic requirement for application—the sale, transfer, or purchase of a "security."

## 5. Detrimental Reliance

Plaintiffs next claim that they are entitled to personal damages under a detrimental reliance theory of recovery, because they accepted the stock certificates instead of cash for the materials and labor furnished by them to Red Jacket, Inc. Initially, this Court must determine whether this claim has prescribed. "As a general matter, detrimental reliance claims are subject to a prescriptive period of ten years." *City of Alexandria v. Cleco Corp.*, 2010 WL 290506, at *10 (W.D. La. Jan. 22, 2010). Nonetheless, "[t]he proper prescriptive period to be applied in any action depends upon the nature of the cause of action." *Roger v. Dufrene*, 613 So. 2d 947, 948 (La. 1993). "The character of an action disclosed in the pleadings determines the prescriptive period applicable to that action." *Ames v. Ohle*, 97 So. 3d 386, 391 (La. App. 4 Cir. 2012). In determining the applicable prescriptive period for a detrimental reliance claim, "the court must determine whether it is viewed as contractual in nature, and thus governed by the prescriptive period of ten years for personal actions, or delictual in nature, and thus governed by a one year prescription." *Id.* at 393.

The Court finds that the present claim is sufficiently contractual in nature. In opposition to the motion for summary judgment, Plaintiffs state that they justifiably relied on Defendants' representation that he would treat them in a manner befitting shareholders and that they could rely upon him to treat them fairly and honestly, and they "were damaged by relying on that representation in that they never realized the profits that would have inured to Red Jacket, Inc.

13

had Mr. Hayden not fraudulently transferred all of Red Jacket, Inc.'s assets and property to Red Jacket Firearms." (Doc. 74, p. 29). In this case, any duty ostensibly owed by Defendants was only owed to the shareholders of Red Jacket, Inc., as opposed to a general duty owed to the public-at-large. Accordingly, this appears to sound in contract rather than in tort, despite the alleged wrongful action. *See Blackstone v. Chase Manhattan Mortg. Corp.*, 802 F. Supp. 2d 732, 739 (E.D. La. 2011) (ten-year prescriptive period applied to detrimental reliance claim because, among other reasons, the plaintiff alleged that the defendant breached a duty that was owed to her specifically, and not a general duty owed to the public-at-large). Plaintiffs' detrimental reliance claim is based in contract, and thus, subject to a ten-year prescriptive period.

Turning to the merits of Plaintiffs' detrimental reliance claim, this Court finds that Plaintiffs have failed to satisfy the requisite elements of a detrimental reliance claim, and thus, summary judgment must be granted in favor of Defendants. Louisiana Civil Code article 1967 provides that:

> A party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying. Recovery may be limited to the expenses incurred or the damages suffered as a result of the promisee's reliance on the promise. Reliance on a gratuitous promise made without required formalities is not reasonable.

La. Civ. Code art. 1967. "To establish detrimental reliance, a party must prove three elements by a preponderance of the evidence: (1) a representation by conduct or word; (2) justifiable reliance; and (3) a change in position to one's detriment because of the reliance." *Suire v. Lafayette City-Parish Consol. Government*, 907 So. 2d 37, 59 (La. 2005) (quoting *Lakeland Anesthesia, Inc. v. United Healthcare of La., Inc.*, 871 So. 2d 380, 393 (La. App. 4 Cir. 2004)). In the present matter, Plaintiffs' claim that they relied on "Mr. Hayden to be honest and forthright in his dealing with [Plaintiffs] as a shareholder of Red Jacket, Inc." (Doc. 74, Ex. C, p. 2; Doc. 74, Ex.

14

D, p. 1-2; Doc. 74, Ex. E, p. 2). In their complaint, Plaintiffs claim they "changed their positions to their detriment because Plaintiffs accepted the stock certificates instead of cash for the materials and labor furnished by them to Red Jacket, Inc." (Doc. 16, p. 16). First, it must be mentioned that Plaintiff Earl Lee apparently did not accept the stock in exchange for services. In his affidavit filed with the Opposition to Defendants' Motion for Summary Judgment, Plaintiff Lee only alleges that "William Hayden <u>gave</u> [him] five (5) Red Jacket, Inc. stock certificates." (Doc. 74, Ex. D, p. 1). Furthermore, in his deposition, Plaintiff Lee provided:

> **Q**     All right. Now, when Trudy gave you these pieces of paper, did she make any promises to you or anything like that?
> **A**     No, sir.
> **Q**     Okay. And because these pieces of paper, these certificates were a gift, you didn't have to do anything in return for them --
> **A**     No, sir.

(Doc. 66-2, p. 18). Thus, it is evident that Plaintiff Lee did not get the stock in exchange for services. Furthermore, the receipt of shares in exchange for the provision of services by Plaintiffs Currey and Radford does not give rise to a claim for detrimental reliance. Plaintiffs chose to receive shares in Red Jacket, Inc. in return for their services, and those shares were apparently provided to them in exchange for the services. This is not a situation where shares were promised and not delivered; rather, the shares were delivered in return for the provision of services by Plaintiffs. Thus, there is no detrimental reliance claim as it relates to the exchange of shares for the provision of services.

In their Opposition, Plaintiffs claim:

> By issuing the stock certificates, Mr. Hayden represented that he would treat Plaintiffs in a manner befitting shareholders, and that they could rely upon him to treat them fairly and honestly in all dealings relating to Red Jacket, Inc. Plaintiffs, as unsophisticated investors, justifiably relied on that representation and believed that Mr. Hayden would treat them fairly and honestly. Finally, Plaintiffs' were damaged by relying on that representation in that they never realized the profits that would have inured to Red Jacket, Inc. had Mr. Hayden not

15

> fraudulently transferred all of Red Jacket, Inc.'s assets and other property to Red Jacket Firearms.

(Doc. 74, p. 29). Accordingly, Plaintiffs are claiming that they suffered damages by relying on the alleged, implied representation made by Defendants. But, to assert a valid claim for detrimental reliance, Plaintiffs must present evidence that they changed their "position to one's detriment because of the reliance." *Suire*, 907 So. 2d at 59. However, Plaintiffs do not present any evidence of a change in position which justifies a detrimental reliance remedy. Rather, they are trying to assert that their failure to do anything with their shares for eight years or to check on Defendants for that time span, and later suffering a loss resulting from the 2010 transfer of assets between the companies, should entitled them to personal damages for unrealized future profits of Red Jacket, Inc. There is no claim that they failed to sell their shares, failed to enter into another transaction, or otherwise had some change in their position in reliance on this ostensible promise by Defendants. Accordingly, since Plaintiffs have failed to allege any change in position in reliance, the Plaintiffs have failed to provide sufficient facts or evidence to prevail on a detrimental reliance claim.

Finally, it appears that Plaintiffs are attempting to use this detrimental reliance claim as a backdoor means to assert their breach of fiduciary duty claim against Defendants and recover personal damages for any loss suffered. As mentioned above, those claims must be brought in a derivative action to recover damages on behalf of the corporation, and not in a personal suit to recover personal damages.

### 6. Revocatory Action Claim

Plaintiffs claim that they have a right to annul the transfer of assets between Red Jacket, Inc. and Red Jacket Firearms through a revocatory action. Louisiana Civil Code article 2036 provides that "[a]n obligee has a right to annul an act of the obligor, or the result of a failure to

16

act of the obligor, made or effected after the right of the obligee arose, that causes or increases the obligor's insolvency." La. Civ. Code art. 2036. However, the primary problem with Plaintiffs' claim is that they do not present evidence or allegation that they are obligees/creditors of Red Jacket, Inc., which is the most fundamental requirement to bring a revocatory action. Instead, Plaintiffs state as a fact that they are obligees/creditors of Red Jacket, Inc. simply by being a shareholder of the corporation. (*See* doc. 16, p. 13) ("Plaintiffs' stock certificates and/or ownership interest make Defendants obligors to Plaintiffs for their respective share of Red Jacket Inc.'s equity value and good will.").

Being a shareholder does not automatically or necessarily make an individual an obligee of a corporation. This is such a fundamental concept that few courts have had to explicate the difference. Nonetheless, almost 160 years ago, the Louisiana Supreme Court did specify that being a shareholder does not automatically make the individual an obligee of the corporation. *See Louis Le Page v. The New Orleans Gas Light and Banking Company*, 7 Rob. (LA) 183, 185 (La. 1844) ("A stockholder is not a creditor until he becames (sic) entitled to a dividend, which, on being refused, might be the cause of an action against the Bank."). Instead, the shareholder must take some affirmative action, such as lending money to the company, or some other circumstances must be present in order to make him an obligee/creditor of the corporation. The mere act of purchasing stock in a corporation does not transform the shareholder into an obligee/creditor of the corporation. This basic concept is reaffirmed by the differentiation inherent in Louisiana's corporate laws, which consistently use the terminology "creditor" and "shareholder" to refer to different individuals. *E.g.*, La. R.S. 12:161 ("a compromise or arrangement or plan of reorganization is proposed between the corporation and its <u>creditors</u>, or any class of them, or between the corporation and its <u>shareholders</u>, or any class of them").

17

In the present matter, Plaintiffs do not present any facts or claims as to how they are obligees/creditors of Red Jacket, Inc., other than their baseless assertion that as shareholders they are obligees. Allegedly, the shares were initially acquired by Plaintiffs Currey and Radford in exchange for the provision of services. However, upon receipt of the shares in repayment for the services, these individuals were no longer creditors of the corporation as their debt had been satisfied by the transfer of the shares. Accordingly, because Plaintiffs only claim to be shareholders of Red Jacket Inc., without anything more, they are not obligees/creditors of the corporation. They have no legal right to bring a revocatory action. Instead, any potential action for the wrongful distribution of assets should have been brought in a derivative action under Louisiana's corporate laws, as outlined earlier in this ruling.

**7. Declaratory Relief**

Finally, Plaintiffs seek a declaratory judgment regarding their respective ownership interests in Red Jacket, Inc. and any subsidiary or spinoff formed by Defendants. In their Motion for Summary Judgment, Defendants ask this court to grant summary judgment holding that Plaintiffs are not entitled to declaratory relief. Under the Federal Declaratory Judgment Act:

> [A]ny court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a). The Court finds that are genuine issues of material fact concerning Plaintiffs' ownership in Red Jacket, Inc., as there does not appear to be any dispute that Plaintiffs were owners in Red Jacket, Inc. Therefore, summary judgment is inappropriate as to this claim.

However, as to Plaintiffs claim for a declaratory judgment delineating "Plaintiffs' respective ownership interests in . . . any subsidiary or spinout formed by Defendants," this

Court finds that there is no genuine issue of material fact, and thus, must grant summary judgment in favor of Defendants. Plaintiffs fail to assert any authority for why this Court should expropriate an ownership interest in Red Jacket Firearms for their benefit. Plaintiffs do not present any allegations that they were given stock or another form of ownership interest in Red Jacket Firearms. Instead, Plaintiffs attempt to rely on an alter ego or single business enterprise theory for their request that this Court should provide them with a declaratory judgment declaring them owners of an equal percentage of Red Jacket Firearms and any other subsidiary or spinoff of Red Jacket, Inc.

However, Plaintiffs misunderstand the purpose of the alter ego and single business enterprise theories. Plaintiffs do not claim to have ever been given ownership in Red Jacket Firearms or any other subsidiary, only an ownership interest in Red Jacket, Inc. Undeterred, Plaintiffs attempt to use the alter ego and single business enterprise theories to acquire an ownership interest in Red Jacket Firearms and any other relevant subsidiaries. However, these theories are used to impose liability on other entities that are alter egos or form part of a single business enterprise with the corporation that has acted in an improper manner. Through an alter ego or single-business enterprise theory, Plaintiffs can seek to recover any damages from the assets of other companies that are deemed to be an alter ego or form part of a single business enterprise with the at-fault corporation. *See Green v. Champion Ins. Co.*, 577 So. 2d 249, 259 (La. App. 1 Cir. 1991) ("Upon finding that a group of corporations constitute a 'single business enterprise,' the court may disregard the concept of corporate separateness to extend liability to each of the affiliated corporations to prevent fraud or to achieve equity."). *See also United States v. Edwards*, 39 F. Supp. 2d 716, 734 n.100 (M.D. La. 1999) ("Under the 'alter ego' doctrine, a court may pierce the corporate veil and impose personal liability on a sole shareholder when it

Case 3:11-cv-00561-JJB-SCR   Document 99   09/13/13   Page 19 of 21

finds that the sole shareholder was in such a position of control and domination as to the corporation that it would be inequitable to recognize the corporation as a separate entity and allow the sole shareholder to escape personal liability."). "When a group of corporations integrate their resources to achieve a common business purpose and do not operate as a separate entity, each affiliated corporation may be held liable for debts incurred in pursuit of its business purpose." *Id.*

In this matter, Plaintiffs are not asking this Court to use these doctrines for this purpose. Rather, Plaintiffs want this Court to use these doctrines to declare them partial owners of Red Jacket Firearms and any other potential subsidiary or spinoff, in equal percentage to their ownership in Red Jacket, Inc. Plaintiffs can attempt to use these theories to impose liability for the acts of Red Jacket, Inc. on Red Jacket Firearms and any other related company—and they have already attempted to do this, as shown above. Nevertheless, Plaintiffs most assuredly cannot use these theories to have this Court expropriate an ownership interest in Red Jacket Firearms and other related entities. Plaintiffs do not allege to have been given shares in Red Jacket Firearms at any time. Instead, they are effectively asserting that their ownership in Red Jacket, Inc. should entitle them to ownership in all other entities owned by or related to Red Jacket, Inc., merely based on this close relationship between the companies. Alter ego theory and single business enterprise cannot be used for this purpose. Accordingly, this Court grants Defendants' summary judgment, and dismisses Plaintiff's claim seeking a declaratory judgment for an ownership interest in "any subsidiary or spinout formed by Defendants."

**Conclusion**

Therefore, Defendants' Motion (doc. 66) for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**. As was previously discussed in the pretrial conference (doc. 96), Plaintiffs have 15 days to file a Motion for Leave to Amend their complaint in order to specifically plead their fraud claim.

Signed in Baton Rouge, Louisiana, on September 13, 2013.

_____

**JUDGE JAMES J. BRADY
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**